**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| BROOK + WHITTLE LTD,<br>*Plaintiff*,<br>v.<br>NESTLE USA, INC. *and* FUJI SEAL INTERNATIONAL, INC.,<br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 2:24-CV-00735-JRG-RSP |

# CLAIM CONSTRUCTION ORDER

On December 10, 2025, the Court held a hearing to determine the proper construction of disputed terms in United States Patent No. 11,961,422.

Before the Court are the Opening Claim Construction Brief (Dkt. No. 93) filed by Plaintiff Brook + Whittle Ltd., the Responsive Claim Construction Brief (Dkt. No. 97) filed by Defendants Nestlé USA, Inc. and Fuji Seal International, Inc. (collectively, "Defendants"), and Plaintiff's reply (Dkt. No. 98). Also before the Court is the parties' August 26, 2025 Joint Claim Construction and Prehearing Statement Pursuant to Patent L.R. 4-3 (Dkt. No. 83) and the parties' November 4, 2025 Joint Claim Construction Chart (Dkt. No. 99).

Having reviewed the arguments made by the parties at the hearing and in their claim construction briefing, having considered the intrinsic evidence, and having made subsidiary factual findings about the extrinsic evidence, the Court hereby issues this Claim Construction Order. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (*en banc*); *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015).

## I. BACKGROUND

Plaintiff alleges infringement of United States Patent No. 11,961,422 ("the '422 Patent"). Dkt. No. 93, Ex. 1.

The ’422 Patent, titled “Recyclable Heat Shrink Film for Recyclable Container,” issued on April 16, 2024, and bears an earliest priority date of May 14, 2021. Plaintiff submits that the ’422 Patent relates to a “recyclable shrink label” that can be embellished and that can be recycled along with a container. Dkt. No. 93 at 3. The Abstract of the ’422 Patent states:

> A recyclable shrink label includes a heat shrink film having a first surface and a second surface opposite of the first surface; and a light blocking layer disposed adjacent the first surface and comprising a light blocking component, the light blocking layer being constructed for the recyclable shrink label to block at least 80% of incident light having wavelengths in a range of 200 nm to 900 nm. The recyclable shrink label may further include an indicia layer. The recyclable shrink label may further include a high opacity layer. The recyclable shrink label may be applied to a container, e.g., a recyclable container. Articles including the recyclable shrink label may be recycled in a process where both the container and the label are recognized as a resin and may be directed into a corresponding recycling stream. In some cases, both the container and the label include PET.

Shortly before the start of the December 10, 2025 hearing, the Court provided the parties with preliminary constructions with the aim of focusing the parties’ arguments and facilitating discussion. Those preliminary constructions are noted below within the discussion for each term.

## II. LEGAL PRINCIPLES

“It is a ‘bedrock principle’ of patent law that ‘the claims of a patent define the invention to which the patentee is entitled the right to exclude.’” *Phillips*, 415 F.3d at 1312 (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). Claim construction is clearly an issue of law for the court to decide. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71 (Fed. Cir. 1995) (en banc), *aff’d*, 517 U.S. 370 (1996). “In some cases, however, the district court will need to look beyond the patent’s intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period.” *Teva*, 135 S. Ct. at 841 (citation omitted). “In cases where those subsidiary facts are in dispute, courts will need to make

subsidiary factual findings about that extrinsic evidence. These are the 'evidentiary underpinnings' of claim construction that we discussed in *Markman*, and this subsidiary factfinding must be reviewed for clear error on appeal." *Id.* (citing 517 U.S. 370).

To determine the meaning of the claims, courts start by considering the intrinsic evidence. *See Phillips*, 415 F.3d at 1313; *see also C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). The intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *See Phillips*, 415 F.3d at 1314; *C.R. Bard*, 388 F.3d at 861. Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent. *Phillips*, 415 F.3d at 1312–13; *accord Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms. *Phillips*, 415 F.3d at 1314. First, a term's context in the asserted claim can be very instructive. *Id.* Other asserted or unasserted claims can aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent. *Id.* Differences among the claim terms can also assist in understanding a term's meaning. *Id.* For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id.* at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* at 1315 (quoting *Markman*, 52 F.3d at 979). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Phillips*, 415 F.3d at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *accord Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313,

1325 (Fed. Cir. 2002). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id.* The specification may also resolve the meaning of ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex*, 299 F.3d at 1325. But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *accord Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc. v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent."). "[T]he prosecution history (or file wrapper) limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance." *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985).

Although extrinsic evidence can be useful, it is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Phillips*, 415 F.3d at 1317 (citations and internal quotation marks omitted). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad

or may not be indicative of how the term is used in the patent. *Id.* at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are entirely unhelpful to a court. *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

The Supreme Court of the United States has "read [35 U.S.C.] § 112, ¶ 2 to require that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014). "A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005) (citations and internal quotation marks omitted), *abrogated on other grounds by Nautilus,* 134 S. Ct. 2120. "Indefiniteness must be proven by clear and convincing evidence." *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017).

## III. AGREED TERMS

In the August 26, 2025 Joint Claim Construction and Prehearing Statement Pursuant to Patent L.R. 4-3, the parties submitted that they had not reached any agreed constructions. Dkt. No. 83 at 1.

## IV. DISPUTED TERMS

**1. "recyclable"**

**2. "wherein the recyclable shrink label is recyclable with a PET container"**

| **"recyclable"** (Claims 1–14, 16–19) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| "capable of being recycled without removing the label from a container before or during the recycling process" | "capable of being processed and recovered in a PET recycling stream" |
| **"wherein the recyclable shrink label is recyclable with a PET container"** (Claims 1, 19) | |
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning (aside from the term "recyclable") | "wherein the claimed heat shrink label is capable of being processed and recovered in its entirety, together with a PET container in the same PET recycling stream, without being separated from the PET container" |

Dkt. No. 83 at 1–2; Dkt. No. 99, Ex. A at 1.

Shortly before the start of the December 10, 2025 hearing, the Court provided the parties with the following preliminary constructions:

| Term | Preliminary Construction |
|---|---|
| "recyclable shrink label" | "Plain meaning (apart from construction of Term 2)" |
| "wherein the recyclable shrink label is recyclable with a PET container" | "the shrink label is capable of being recycled without separating the shrink label material from a PET container material before or during the recycling process" |

At the December 10, 2025 hearing, the parties agreed to the Court's preliminary constructions. The Court therefore hereby construes these terms as set forth in the following chart:

| Term | Construction |
|---|---|
| "recyclable" | **Plain meaning** (apart from construction of "wherein the recyclable shrink label is recyclable with a PET container") |
| "wherein the recyclable shrink label is recyclable with a PET container" | **"wherein the shrink label is capable of being recycled without separating the shrink label material from a PET container material before or during the recycling process"** |

**3. "polyethylene terephthalate (PET)"**

| **"polyethylene terephthalate (PET)"** (Claims 1, 5, 14, 18, 19) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning | "A polymer prepared from terephthalic acid (or its esters) and ethylene glycol, and not any other monomers"[1] |

Dkt. No. 83 at 1; Dkt. No. 99, Ex. A at 6.

Shortly before the start of the December 10, 2025 hearing, the Court provided the parties with the following preliminary construction: "Plain meaning."

(a) The Parties' Positions

Plaintiff argues that this is a well-known term in the relevant art and needs no construction. Dkt. No. 93 at 12. Plaintiff also argues that "the specification provides numerous examples of how PET is used with recyclable, light blocking labels, demonstrating its readily understandable

[1] Defendants previously proposed: "A polymer prepared from terephthalic acid (or dimethyl terephthalate) and ethylene glycol, and not any other monomers." Dkt. No. 83 at 1.

ordinary meaning." *Id.* at 13. Further, Plaintiff argues that Defendants' proposal "improperly excludes express embodiments" and "improperly converts the apparatus claims of the '422 Patent into method claims for manufacturing PET." *Id.* at 15.

Defendants respond that "the parties disagree on whether the plain and ordinary meaning of PET is the specific, well-known homopolymer PET or whether its meaning can be stretched to include chemically distinct *copolymers* like polyethylene terephthalate glycol-modified ('PETG')." Dkt. No. 97 at 2. Defendants argue that "Defendants' proposed construction defines PET according to its established scientific meaning, which is fully consistent with the '422 Patent's intrinsic record and authoritative technical literature." *Id.* Defendants also argue that "Plaintiffs request for 'plain and ordinary meaning,' without offering any construction whatsoever, is a purposeful invitation to ambiguity." *Id.* at 3. Further, Defendants submit that a copolymer such as PETG is fundamentally different than PET, and "the creation of copolymers like PETG is a chemical transformation, not a physical mixing." *Id.* at 5. Defendants urge that the intrinsic evidence, including prosecution history as well as related patent applications, "speaks with one voice, consistently treating 'PET' not as a broad category of materials, but as the specific homopolymer known to science." *Id.* at 6–10. Defendants argue that the opinion of Plaintiff's expert that PETG "comprises PET" is a fundamental misunderstanding of polymer science. *Id.* at 12; *see id.* at 12–16.

Plaintiff replies that "PET" is a well-known term, such that "the Court need not resolve the fabricated scientific debate Defendants attempt to inject into the *Markman* process." Dkt. No. 98 at 6 (citations omitted). Plaintiff also argues, for example: "Defendants assert that the Patentee's statements regarding PET recyclability means that the claims exclude PETG (see Opp. at 8–9), but

whether an article is recyclable is an independent question from whether a PETG label comprises PET." Dkt. No. 98 at 7.

At the December 10, 2025 hearing, the parties presented oral arguments as to this term.

(b) Analysis

The claims recite "a heat shrink film comprising polyethylene terephthalate (PET)." Defendants present extensive evidence and arguments regarding the chemical nature of PET. *See* Dkt. No. 97 at 2–16. Defendants urge that PET does not include polyethylene terephthalate glycol-modified ("PETG" or "PTE-G"), and Defendants argued at the December 10, 2025 hearing that this is a scientific issue that should be resolved by the Court as part of claim construction. Defendants also cite the following disclosure in the specification as demonstrating that PET and PETG are different from one another:

> The heat shrink film may consist of polyethylene terephthalate (PET), polyethylene terephthalate glycol-modified (PETG or PET-G), polyvinyl chloride (PVC), polystyrene or oriented polystyrene (OPS), polylactic acid (PLA), polypropylene (PP), polyethylene (PE), or a combination thereof. The heat shrink film may *consist of only one of polyethylene terephthalate (PET), polyethylene terephthalate glycol-modified (PETG or PETG),* polyvinyl chloride (PVC), polystyrene or oriented polystyrene (OPS), polylactic acid (PLA), polypropylene (PP), or polyethylene (PE). The heat shrink film may consist of polyethylene terephthalate (PET).

'422 Patent at 20:58–21:2 (emphasis added).

Plaintiff replies, however, that "all parties and experts agree that PET and PETG are different molecules." Dkt. No. 98 at 6. Because this is not in dispute, no construction is necessary in this regard. *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) ("[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy."). Plaintiff's prosecution of other patents with claims directed to PETG, cited by Defendants, does not give rise to any confusion or claim scope controversy as to the claims reciting PET in the present case. Dkt. No. 97 at 9–10. Also, any dispute regarding whether the

presence of PETG would affect recyclability does not affect the meaning of the term "polyethylene terephthalate (PET)." *See id.* at 8–9.

Plaintiff also persuasively replies that PET is well-known in the relevant art, which Defendants do not dispute. For example, Defendants' expert agrees that "a POSITA's general knowledge would have included the widespread use of PET," and "at the time of the '422 Patent, and still today, PET is a dominant material for beverage and food containers." Dkt. No. 93, Ex. 3, Sept. 16, 2025 Storey dep. at 88:20–89:6; *see id.* at 69:13–18 ("PET is the most important polyester. It is one of the most important packaging plastics.").

Further, Defendants' proposal would construe PET based on what it is "prepared from." Defendants' expert cites *The Merck Index*, for example, as defining "Polyethylene Terephthalates" as "[f]iber forming polyesters prep[are]d from terephthalic acid . . . or its esters and ethylene glycol." Dkt. No. 97, Ex. A, Aug. 26, 2025 Storey Decl. ¶ 66 (citing Ex. H (NUSA 0003468).) Construing PET based on what it is prepared from, however, would be contrary to the principle that "[t]he method of manufacture, even when cited as advantageous, does not of itself convert product claims into claims limited to a particular process." *Vanguard Prods. Corp. v. Parker Hannifin Corp.*, 234 F.3d 1370, 1372 (Fed. Cir. 2000). Rather, the parties' above-cited arguments demonstrate that the parties have a mutual understanding of the physical/chemical nature of PET.

Finally, Defendants cite prosecution history in which the patentee amended to add "polyethylene terephthalate (PET)" and to add "wherein the recyclable shrink label is recyclable with a PET container." Dkt. No. 97, Ex. C, Oct. 16, 2023 Amendment and Response at 2 (FSI-0000417). The patentee distinguished the "Mitchell '879" reference (United States Patent Application Publication No. 2017/0223879):

> The shrink labels taught by Mitchell '879 are not made of PET and would not be recyclable with a PET container. Labels made of other materials, including

> polypropylene, polyethylene, and paper, are considered contaminants in a PET recycling stream and need to be removed for the PET container to be recycled. This is supported by a Resource Document by the Association of Plastic Recyclers (APR), provided herewith. The APR document states:
>
> > "APR recommends films that are compatible with PET recycling such as:
> >
> > 1. Films that float in water and that can be **separated from PET** that sinks in water, or,
> >
> > 2. **PET based films** that crystallize and **can be recovered *with the PET stream***."
>
> *See* APR document page 2, emphasis added.
>
> The Mitchell '879 film does not fall into the second category and is not recyclable with the PET stream. If the film floats (despite its metal content), it may fall into the first category because it can be separated from PET.

Dkt. No. 97, Ex. C, Oct. 16, 2023 Amendment and Response at 9 (FSI-0000424) (bold and italics in original).

Defendants also cite statements by Plaintiff in responding to a Petition for Post Grant Review ("PGR"), in which Plaintiff referred back to the above-reproduced arguments in the October 16, 2023 Amendment and Response:

> During prosecution, Applicant overcame a § 103 rejection stating that "[t]he shrink labels taught by Mitchell '879 are not made of PET and would not be recyclable with a PET container," because "[l]abels made of other materials, including polypropylene, polyethylene, and paper, are considered contaminants in a PET recycling steam [*sic*] and *need to be removed* for the PET container to be recycled." EX1002 at 336 (emphasis added). Applicant further explained that Shrink Sleeve Labels on PET Containers APR Resource Document (*see* EX1002 at 323–332) states:
>
> > APR recommends films that are compatible with PET recycling such as:
> > 1. Films that float in water and that can be **separated from PET** that sinks in water, or,
> > 2. **PET based films** that crystallize and **can be recovered *with the PET stream***.

> EX1002 at 336 (emphasis in original) (quoting EX1002 at 324). Applicant distinguished the Mitchell reference stating it "does not fall into the second category [of the APR Resource Document] and is not recyclable ***with the PET stream***." EX1002 at 336. Thus, Applicant informed a POSITA that the claimed invention was limited to "PET based films that crystallize and can be recovered with the PET stream," and did not include films that must be separated from PET during the recycling process.

Dkt. No. 97, Ex. D, June 23, 2025 Patent Owner's Preliminary Response at 32–33 (BW0005615–16) (bold and italics in original). These statements by Plaintiff in PGR proceedings are part of the prosecution history. *Cf. Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1360–61 (Fed. Cir. 2017) ("Because an IPR proceeding involves reexamination of an earlier administrative grant of a patent, it follows that statements made by a patent owner during an IPR proceeding can be considered during claim construction and relied upon to support a finding of prosecution disclaimer.").

At the December 10, 2025 hearing, Defendants characterized these statements as disparaging the use of anything other than PET, but Defendants do not identify any statement that warrants limiting the meaning of "polyethylene terephthalate (PET)."

Defendants maintain that the issue of whether PETG is within the scope of the term "polyethylene terephthalate" is a question of claim construction, and Defendants cite authority for the proposition that district courts are obligated to resolve disputes regarding claim scope. *See, e.g., NobelBiz, Inc. v. Global Connect, LLC*, No. 2016-1104, 2016-1105, 701 F. App'x 994, 997 (Fed. Cir. July 19, 2017).

Claim construction, however, is not directed to including or excluding accused instrumentalities. *See Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1367 (Fed. Cir. 2008) ("Although it is appropriate for a court to consider the accused device when determining what

aspect of the claim should be construed, it is not appropriate for the court to construe a claim solely to exclude the accused device.") (citation and internal quotation marks omitted).

The Court therefore hereby expressly rejects Defendants' proposed construction, and no further construction is necessary. *See U.S. Surgical*, 103 F.3d at 1568 ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy."); *see also O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010) ("Unlike *O2 Micro*, where the court failed to resolve the parties' quarrel, the district court rejected Defendants' construction."); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1326 (Fed. Cir. 2012); *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015); *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 977–79 (Fed. Cir. 2021).

Any dispute regarding whether a particular material (such as PETG, or a material containing PETG) meets the claim limitations is a question of fact regarding infringement. *See PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1355 (Fed. Cir. 1998) ("after the court has defined the claim with whatever specificity and precision is warranted by the language of the claim and the evidence bearing on the proper construction, the task of determining whether the construed claim reads on the accused product is for the finder of fact"); *see also Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*, 815 F.3d 1314, 1318–19 (Fed. Cir. 2016) (citing *PPG*, 156 F.3d at 1355).

Therefore, the Court hereby construes "polyethylene terephthalate (PET)" to have its **plain meaning.**

**4. "crystallizable polyethylene terephthalate (PET)"**

| **"crystallizable polyethylene terephthalate (PET)"** (Claim 18) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning | "polyethylene terephthalate (PET) (as construed) that is capable of crystallizing" |

Dkt. No. 83 at 2; Dkt. No. 99, Ex. A at 8.

Shortly before the start of the December 10, 2025 hearing, the Court provided the parties with the following preliminary construction: "polyethylene terephthalate (PET) that is capable of crystallizing."

(a) The Parties' Positions

Plaintiff urges that Defendants' proposal of "capable of crystallizing" contradicts the testimony of Defendants' own expert that *all* PET is capable of crystallizing. Dkt. No. 93 at 18. Plaintiff also argues that Defendants' proposal would violate the doctrine of claim differentiation by rendering Claims 1 and 18 redundant with one another. *Id.* at 20–21. Further, Plaintiff argues that "there are forms of PET that are not crystallizable." *Id.* at 21.

Defendants respond that "[b]oth the intrinsic and extrinsic record demonstrate that 'crystallizable PET' has a narrower scope than 'PET,' and the Court should adopt Defendants' construction to resolve this dispute and to properly instruct the jury." Dkt. No. 97 at 17. Defendants argue that "[t]he full and unrebutted record evidence demonstrates that while PET *as synthesized* is inherently capable of crystallizing, that capability can be—and in the real world, often is—irreversibly destroyed." *Id.* at 17–18. Defendants urge that "[t]he Court should not credit attorney argument on complex science over unrebutted expert testimony." *Id.* at 19.

Plaintiff replies that "Defendants' opposition indicates there is no substantive dispute over this term, which Defendants now agree means 'PET that is capable of crystallizing,'" and "Defendants' proposal merely rearranges words in the claim without explaining how this rearrangement resolve any ambiguity." Dkt. No. 98 at 7–8 (citations omitted).

At the December 10, 2025 hearing, the parties presented oral arguments as to this term.

(b) Analysis

Claim 18 recites:

> 18. The recyclable shrink label according to claim 1, wherein the heat shrink film comprises crystallizable polyethylene terephthalate (PET).

Plaintiff does not substantively oppose Defendants' proposal that "crystallizable" PET is "PET that is capable of crystallizing." *See* Dkt. No. 98 at 8–10. In particular, Plaintiff does not dispute Defendants' contention that "PET" has a broader meaning than "crystallizable PET" because "while PET *as synthesized* is inherently capable of crystallizing, that capability can be—and in the real world, often is—irreversibly destroyed." Dkt. No. 97 at 18. The testimony of Defendants' expert cited by Plaintiff, that Claim 1 and Claim 18 are the same, is therefore of no moment. Dkt. No. 93, Ex. 3, Sept. 16, 2025 Storey dep. at 155:4–156:3.

Plaintiff's arguments at the December 10, 2025 hearing, arguing primarily that Defendants' proposal of "capable of" is unnecessary and potentially confusing, were also unpersuasive. Plaintiff does not contest the accuracy of Defendants' proposed construction, and Defendants' proposed construction will assist the finder of fact in understanding the claim.

The Court accordingly hereby construes "crystallizable polyethylene terephthalate (PET)" to mean **"polyethylene terephthalate (PET) that is capable of crystallizing."**

**5. "comprising polyethylene terephthalate (PET)"**

| **"comprising polyethylene terephthalate (PET)"** (Claims 1, 19) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning<br>Term is not indefinite under 35 U.S.C. § 112 | Indefinite under 35 U.S.C. § 112 or, in the alternative, should be construed as "the majority of which is polyethylene terephthalate (PET) (as construed)" |

Dkt. No. 83 at 2; Dkt. No. 99, Ex. A at 8.

Shortly before the start of the December 10, 2025 hearing, the Court provided the parties with the following preliminary construction: "Plain meaning."

(a) The Parties' Positions

Plaintiff argues that "a POSITA would have readily understood the plain and ordinary meaning of 'comprising PET,' which refers to a material that includes PET (as a stated element) and possibly includes other elements . . . ." Dkt. No. 93 at 23 (citation omitted). Plaintiff also argues that "the specification provides a clear definition of the term 'comprises' (and 'consists of') consistent with how the terms are used in the claims and with Federal Circuit law . . . ." *Id.* at 24. Further, Plaintiff argues that the testimony of Defendants' own expert "makes it abundantly clear that a POSITA would not have been confused by the scope of Claim 1—with respect to 'comprising PET' and/or 'recyclable with a PET container' (which Defendants did not challenge)—because there are established industry benchmarks for determining the recyclability of materials with PET." *Id.* at 28. Finally, Plaintiff argues that Defendants' alternative proposal of "majority" lacks support beyond the opinion of Defendants' expert, which Plaintiff argues lacks any explanation. *Id.* at 29.

Defendants respond that "[t]he patent and file history provide no objective boundaries or other guidance that would delineate for a POSITA how much or how little of the claimed heat shrink film can or must be comprised of PET and still allow the label to be 'recyclable with a PET container.'" Dkt. No. 97 at 26 (citations omitted). Defendants argue that "although a POSITA *ordinarily* may have understood 'comprising PET' to mean that the claimed film includes some but not 100% PET, that understanding is no longer clear because of Applicants' own arguments and the APR Resource Document." *Id.* at 28. Defendants urge that "[n]owhere in either intrinsic source do Applicants provide any guidance, criteria, or objective boundary whatsoever as to how much or how little of the film can be PET and still maintain the recyclability of the label." *Id.*

Plaintiff replies that Defendants' responsive brief "confirms that a POSITA would know that a heat shrink film 'comprises PET' if it contains some amount of PET." Dkt. No. 98 at 8 (citation omitted). Plaintiff also argues, for example, that "the scope of the '422 Patent includes a heat shrink film that contains some amount of PET that is also recyclable with a PET container," and "[i]f a film does not contain PET, or is not recyclable with a PET container, then it is outside the scope." *Id.* at 8–9 (citations omitted).

At the December 10, 2025 hearing, the parties presented oral arguments as to this term.

(b) Analysis

Claims 1 and 5, for example, recite (emphasis added):

> 1. A recyclable shrink label comprising:
>
> *a heat shrink film comprising polyethylene terephthalate (PET)* and having a first surface and a second surface opposite of the first surface, the heat shrink film having a thickness from 15 μm to 100 μm; and
>
> a light blocking layer disposed adjacent the first surface and comprising a light blocking component, the light blocking layer being constructed for the recyclable shrink label to block at least 80% of incident light having wavelengths in a range of 200 nm to 900 nm, wherein the light blocking component comprises a particulate having a particle size of 0.1 μm to 100 μm, wherein the particulate

> comprises metal, metal oxide, a reflective pigment, carbon black, mica, or a combination thereof, and
>
> wherein the recyclable shrink label is recyclable with a PET container.
>
> * * *
>
> 5. The recyclable shrink label of claim 1, wherein the heat shrink film *consists* of polyethylene terephthalate (PET).

Defendants argue that "the only information a POSITA can glean from the claims is that *some, but not all* of the film must be PET." Dkt. No. 97 at 28.

Yet, the meaning of "comprising" is reasonably certain as commonly used in patent claim drafting, and the specification reinforces this by expressly defining "'comprises' and variations thereof" (and by contrasting that term with "consisting of" and "substantially") in a manner consistent with this understanding:

> The term "comprises" and variations thereof do not have a limiting meaning where these terms appear in the description and claims. Such terms will be understood to imply the inclusion of a stated step or element or group of steps or elements but not the exclusion of any other step or element or group of steps or elements.
>
> By "consisting of" is meant including, and limited to, whatever follows the phrase "consisting of[.]" Thus, the phrase "consisting of" indicates that the listed elements are required or mandatory, and that no other elements may be present.
>
> * * *
>
> The term "substantially" as used here has the same meaning as "nearly completely," and can be understood to modify the term that follows by at least about 90%, at least about 95%, or at least about 98%.

'422 Patent at 3:15–24 & 3:34–37.

Also, Defendants' own expert confirms that "comprising" PET simply refers to having some amount of PET:

> Q. So would you agree that when the patent discusses the term substantially, there is a quantitative component; but when the patent discusses the term comprises, there is no quantitative component? [Objection]

> THE WITNESS: I agree. Comprises is open-ended. It could be -- it could be anywhere from the barest fraction of 1 percent up to 99-and-a-fraction percent.

Dkt. No. 93, Ex. 3, Sept. 16, 2025 Storey dep. at 160:4–13; *see id.* at 157:12–18 (". . . [I]t's your understanding that comprising must include PET but could also include other things. Is that fair? A. Yes."). This is consistent with dependent Claim 5 more narrowly reciting "wherein the heat shrink film *consists of* polyethylene terephthalate (PET)." This is also consistent with disclosure in the specification regarding the possibility of "blends" of polymers:

> Illustrative specific polymers or polymer types that can be utilized to form shrink films can include, for example, polyethylene terephthalate (PET), polyethylene terephthalate glycol-modified (PETG or PETG), polyvinyl chloride (PVC), polystyrene or oriented polystyrene (OPS), polylactic acid (PLA), copolymers, nonpetroleum based biopolymers, and copolymers and *blends* thereof.

'422 Patent at 9:3–10 (emphasis added).

Defendants argue that this is not reasonably certain because the intrinsic evidence does not "provide any guidance, criteria, or objective boundary whatsoever as to how much or how little of the film can be PET and still maintain the recyclability of the label." Dkt. No. 97 at 28. In so arguing, Defendants point to the claim limitation "wherein the recyclable shrink label is recyclable with a PET container."

Any purported confusion regarding that separate limitation (as to which the parties have agreed upon a construction, set forth above) does not demonstrate any lack of reasonable certainty as to the meaning of "comprising." Defendants argue: "[I]t is not relevant that 'comprising' and 'PET,' in isolation, may not be indefinite, or that 'recyclable with a PET container' as described in the patent and file history may not be indefinite." Dkt. No. 97 at 29–30 (citation omitted). Defendants maintain that "[i]n the context of this particular invention and what has been stated about it in the intrinsic record, the scope of 'comprising PET'—and thus the *claims* as a whole—is not reasonably certain." *Id.* at 30; *see id.*, Ex. A, Aug. 26, 2025 Storey Decl. ¶¶ 104–05.

This argument regarding the combination of recited limitations perhaps pertains to a potential argument regarding enablement or written description, but such an argument is not properly part of these claim construction proceedings. *See Phillips*, 415 F.3d at 1327 ("[W]e have certainly not endorsed a regime in which validity analysis is a regular component of claim construction."). The testimony of Defendants' expert essentially confirms this:

> Q. All right. You mentioned the term indefinite. And I was going to get into indefiniteness in a bit. I'm still a little bit stuck on ambiguity, as you stated in Paragraph 104, because I'm still having a hard time really understanding what it is that you find ambiguous. Can you help me understand that, please? [Objection]
>
> THE WITNESS: To me, reading the patent, when the written description talks about using PET in combination with many other things, it just seemed to be confounding to me. And if ambiguity was the -- perhaps it's not the right word. But it just didn't make sense to me to name these -- all of these different polymers that could be used in combination with PET when the goal of the patent is to have a shrink film that's recyclable with a PET container.

Dkt. No. 93, Ex. 3, Sept. 16, 2025 Storey dep. at 168:20–169:12.

As for the proper construction, Defendants' alternative proposal—that "comprising" PET means "the majority of which is polyethylene terephthalate (PET) (as construed)"—is inconsistent with the above-reproduced disclosure that "comprises" means merely "inclusion," not majority. *See* '422 Patent at 3:15–20. Defendants' proposal is also inconsistent with the usual meaning of "comprising" in patent claim drafting parlance. *See, e.g., Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367 (Fed. Cir. 2005) ("The word 'comprising' transitioning from the preamble to the body signals that the entire claim is presumptively open-ended.").

Finally, at the December 10, 2025 hearing, Defendants cited prosecution history in which the patentee amended to add "polyethylene terephthalate (PET)" and to add "wherein recyclable shrink label is recyclable with a PET container." Dkt. No. 97, Ex. C, Oct. 16, 2023 Amendment

and Response at 2 (FSI-0000417). The patentee distinguished the "Mitchell '879" reference (United States Patent Application Publication No. 2017/0223879):

> The shrink labels taught by Mitchell '879 are not made of PET and would not be recyclable with a PET container. Labels made of other materials, including polypropylene, polyethylene, and paper, are considered contaminants in a PET recycling stream and need to be removed for the PET container to be recycled. This is supported by a Resource Document by the Association of Plastic Recyclers (APR), provided herewith. The APR document states:
>
> > "APR recommends films that are compatible with PET recycling such as:
> >
> > 1. Films that float in water and that can be **separated from PET** that sinks in water, or,
> >
> > 2. **<u>PET based</u> films** that crystallize and **can be recovered *with the PET stream***."
>
> *See* APR document page 2, emphasis added.
>
> The Mitchell '879 film does not fall into the second category and is not recyclable with the PET stream. If the film floats (despite its metal content), it may fall into the first category because it can be separated from PET.

Dkt. No. 97, Ex. C, Oct. 16, 2023 Amendment and Response at 9 (FSI-0000424) (bold and italics in original; underline added); *see also id.*, APR Resource Document, No. RES-LBL-2, *Shrink Sleeve Labels on PET Containers* (Jan. 4, 2021) (FSI-0000434).

Defendants cite similar assertions by Plaintiff in responding to a Petition for Post Grant Review ("PGR"), in which Plaintiff referred back to the above-reproduced arguments in the October 16, 2023 Amendment and Response:

> During prosecution, Applicant overcame a § 103 rejection stating that "[t]he shrink labels taught by Mitchell '879 are not made of PET and would not be recyclable with a PET container," because "[l]abels made of other materials, including polypropylene, polyethylene, and paper, are considered contaminants in a PET recycling steam [*sic*] and *need to be removed* for the PET container to be recycled." EX1002 at 336 (emphasis added). Applicant further explained that Shrink Sleeve Labels on PET Containers APR Resource Document (*see* EX1002 at 323–332) states:

> > APR recommends films that are compatible with PET recycling such as:
> > 1. Films that float in water and that can be **separated from PET** that sinks in water, or,
> > 2. **PET based films** that crystallize and **can be recovered *with the PET stream***.
>
> EX1002 at 336 (emphasis in original) (quoting EX1002 at 324). Applicant distinguished the Mitchell reference stating it "does not fall into the second category [of the APR Resource Document] and is not recyclable ***with the PET stream***." EX1002 at 336. Thus, Applicant informed a POSITA that the claimed invention was limited to "PET based films that crystallize and can be recovered with the PET stream," and did not include films that must be separated from PET during the recycling process.

Dkt. No. 97, Ex. D, June 23, 2025 Patent Owner's Preliminary Response at 32–33 (BW0005615–16) (bold and italics in original; underline added); *see id.*, Ex. A, Aug. 26, 2025 Storey Decl. ¶¶ 24–31.

Defendants argued that (if the Court finds that "comprising PET" is not indefinite) the patentee's above-reproduced statements require limiting the claimed invention to "PET based" films, and Defendants argued that "PET based" means that the predominant constituent is PET.

Defendants' argument is unpersuasive because the cited statements do not define "PET based" as meaning predominantly PET and because any such inference is undercut by the patentee having stated that "[t]he shrink labels taught by Mitchell '879 are *not made of* PET and would not be recyclable with a PET container." Dkt. No. 97, Ex. C, Oct. 16, 2023 Amendment and Response at 9 (FSI-0000424) (emphasis added). Thus, a reasonable reading is that the patentee distinguished Mitchell '879 based not on the patentee using a film that is predominantly PET but rather based on using a film that has any PET at all. *See Tech. Props. Ltd. LLC v. Huawei Techs. Co., Ltd.*, 849 F.3d 1349, 1357–58 (Fed. Cir. 2017) ("If the challenged statements are ambiguous or amenable to multiple reasonable interpretations, prosecution disclaimer is not established.") (citation omitted);

*see also Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1332 (Fed. Cir. 2004) ("Because the statements in the prosecution history are subject to multiple reasonable interpretations, they do not constitute a clear and unmistakable departure from the ordinary meaning of the term . . . .") (citation omitted); *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003) ("prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on *definitive statements* made during prosecution") (emphasis added).

This understanding is reinforced by the patentee having drafted the claims to recite, on one hand, a "PET container" and, on the other hand, a film merely "comprising" PET.

In sum, "comprising polyethylene terephthalate (PET)" is clear on its face and is reinforced by the specification expressly defining "comprises," so the term is not indefinite, and Defendants' alternative proposed construction lacks sufficient support in the cited prosecution history or in any other evidence presented by Defendants.

The Court therefore hereby expressly rejects Defendants' indefiniteness argument as well as Defendants' alternative proposed construction, and no further construction is necessary. *See U.S. Surgical*, 103 F.3d at 1568; *see also O2 Micro*, 521 F.3d at 1362; *Finjan*, 626 F.3d at 1207; *ActiveVideo*, 694 F.3d at 1326; *Summit 6*, 802 F.3d at 1291; *Bayer*, 989 F.3d at 977–79.

The Court accordingly hereby construes "comprising polyethylene terephthalate (PET)" to have its **plain meaning**.

## V. CONCLUSION

The Court adopts the constructions set forth in this opinion for the disputed terms of the patent-in-suit. The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court,

in the presence of the jury. Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

**SIGNED this 12th day of December, 2025.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE